**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David M. Rodriguez, Judy Gonzales Poggi, Jose Mendoza, Frank Rivera, Mario Quezada, and Esther Anaya-Garcia, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>vs.<br><br>Maricopa County Community College District, The Governing Board of the Maricopa County Community College District, Rufus Glasper, in his official and individual capacity, and Phillip Randolph, in his official and individual capacity,<br><br>  Defendants. | No. CIV 04-2510-PHX-EHC<br><br>**ORDER** |

Pending before the Court is Plaintiffs' Motion for Class Certification [Dkt. 26], supported by a Memorandum of Points and Authorities [Dkt. 27]. Defendants filed a Response opposing class certification. [Dkt. 56]. Plaintiffs filed a Reply. [Dkt. 61].

**Background**

Plaintiffs are six persons of Latino origin employed by the Defendant Maricopa County Community College District (District). Plaintiffs are also the putative representatives of a class consisting of all the Latino employees of the District. The District maintains an e-mail system, known as a "listserv," for its employees to communicate with one another. The e-mail system allows an employee to simultaneously send a single e-mail

1 message to every employee of the District. According to Plaintiffs, the e-mail system is
2 primarily for the purpose of communications regarding the educational, research,
3 administrative, and business activities of the District. Defendants' policy regarding the use
4 of the e-mail system states that Defendants do not monitor the use of the e-mail system,
5 recognizing "that the free exchange of opinions and ideas is essential to academic
6 freedom." [Dkt. 56, ex. 5, p. 1].

7 Over a two-week period in October of 2003, Walter Kehowski, a faculty member in
8 the Mathematics Department of the District's Glendale Community College, sent three e-
9 mails to every employee of the District, including the Plaintiffs and the putative class
10 members. In the e-mails Kehowski expressed his views, detailed below, on topics such as
11 immigration, multiculturalism, affirmative action and diversity. Kehowski also expressed his
12 views on his faculty website, which was linked to the District's webpage.

13 On October 7, 2003, Kehowski sent an e-mail in response to the announcement of
14 a cultural event by a Latino student group. The e-mail called the student group "'racist' and
15 separatist, denounced 'diversity double-talk,' and contained Internet links to offensive
16 articles, including one discussing a fear that Latinos will 'take over' the country." [Dkt. 27,
17 p. 4, quoting Dkt. 33, ex. 1].

18 On October 13, 2003, Kehowski sent a second e-mail, which began "YES! Today's
19 Columbus Day! It's time to acknowledge and celebrate the superiority of Western
20 Civilization. Enjoy the buffet." [Dkt. 29, ex. 3, p. 2]. The "buffet" referred to in the e-mail,
21 was the collection of website links and excerpts of articles attached thereto. The collection
22 of links and excerpts of articles set forth themes similar to those expressed in Kehowski's
23 e-mail. For instance, one excerpt stated that "America did not become the mightiest nation
24 on earth without distinct values and discrimination. The government was created by
25 White, Anglo-Saxon (English) Protestants, with guns in their hands." [Dkt. 29, ex. 3, p. 7].
26 Kehowski also provided his comments on the excerpts. For example, in response to the
27 statement that "the ideas of individual liberty, political democracy, human rights and
28

cultural freedom... are European ideas, not Asian, nor African, nor Middle Eastern ideas," Kehowski comments that "One might add that they're not Latin American ideas either." [Dkt. 29, ex. 3, p. 2].

On October 15, 2003, Kehowski sent a third e-mail, which denounced "multiculturalism" and "d-d-d-diversity," and proclaimed that "Western Civilization is superior." [Dkt. 27, p. 5]. The e-mail ended with a warning: "Remember, only the victor writes the history. YES! You think <u>La Raza</u>[1] doesn't already know that?" [Dkt. 33, ex. 3, p. 11 (emphasis in original)].

One employee responded to Kehowski's e-mails. Kehowski replied to that employee, saying "if the White Man will not defend his culture, will even eagerly participate in its destruction (that's what you've just witnessed with Columbus Day), then Hispanics (for example) sense that they can replace his culture with their own language and culture." [Dkt. 29, ex. 4 (parenthetical statements in original)].

The e-mails included articles and statements written by Samuel P. Huntington, a Harvard professor and author, and Arthur Schlesinger, a two-time Pulitzer Prize winning author. [Dkt. 29, ex. 3, p. 2]. The e-mails included a link to Kehowski's faculty website, which proclaimed that "The only immigration reform imperative is preservation of White majority." [Dkt. 29, ex. 5, p. 1]. The website also included links to articles similar to those contained in the e-mails. At some time after October of 2003, the links to articles were moved to a separate "Intelligence" page on Kehowski's faculty website. In early 2005, the "Intelligence" page was removed from Kehowski's faculty website.[2]

District employees complained to the administration of the District and its Governing Board (also named as a Defendant), sending letters and e-mails to Defendant

---

[1] "The term La Raza refers to Mexican Americans and other Latinos." [Dkt. 27, p. 5, fn. 2].

[2] Defendants role in the removal of the "Intelligence" page, if any, has not been presented to the Court at this time.

- 3 -

Rufus Glasper, the District's Chancellor, and Defendant Phillip Randolph, the President of Glendale Community College. Plaintiffs allege that the District did not limit Kehowski's communications through e-mail or the website, and did not take any action against Kehowski personally.

On October 16, 2003, Defendant Randolph sent an e-mail to the employees of Glendale Community College, advising that "the openness of [the District's e-mail] system also allows individuals to express opinions on almost any subject" and that "I want everyone... to know that personally and administratively, I support the District's values and philosophy about diversity." [Dkt. 56, ex. 3].

On October 23, 2003, Defendant Glasper issued a press release regarding Kehowski's communications. The press release states that Kehowski's "message is not aligned with the vision of our district." The bulk of the press release highlights the District's commitment to academic freedom, which dictates that taking action against Kehowski "could seriously undermine our ability to promote true academic freedom." [Dkt. 56, ex. 4]. This press release received public mention in the November 15, 2003 edition of the Arizona Republic newspaper. [Dkt. 63, ex. 5].

On November 7, 2003, Defendant Randolph held a meeting with approximately 40 Latino employees of Glendale Community College. On December 9, 2003, the District's Governing Board held a public meeting regarding Kehowski's communications. Speakers, including Latino employees, students, and members of the community, voiced their concerns regarding Kehowski's communications.

Plaintiffs allege that the District's decision to allow Kehowski's communications without reprimanding him or taking other action has emboldened others to make similar communications. On February 12, 2004, David Dudley, a math professor at the District's Phoenix College sent every Phoenix College employee an e-mail with the subject: "'New Hiring Procedures for Phoenix College.'" The message itself stated: "'1. Are you Hispanic?

1  If yes, Congratulations you've got the job. Oh by the way, what is your name and what job
2  do you want?'" [Dkt. 27, pp. 9-10].

3  Plaintiffs filed charges of racial and national origin discrimination with the Equal
4  Employment Opportunity Commission (EEOC). On April 28, 2004, the EEOC issued identical
5  Determinations to Plaintiffs, finding "reasonable cause to believe that [the District] violated
6  Title VII by harassing Charging Party and a class of employees, because of their national
7  origin, race, religion, and sex." [Dkts. 33, ex. 5; 36, ex. 1; 37; ex. 1; 38, ex. 1; 39, ex. 1]. The
8  parties unsuccessfully tried informal conciliation. On August 18, 2004, the EEOC issued
9  identical right to sue letters to Plaintiffs. [Dkts. 31, ex. 1; 33, ex. 6; 36, ex. 2; 37, ex. 2; 38, ex.
10 2; 39, ex. 2].

11 Plaintiffs filed a Complaint in this Court on November 12, 2004. [Dkt. 1]. The
12 Complaint alleges a hostile work environment in violation of 42 U.S.C. §§ 2000e et seq.,
13 popularly known as Title VII of the Civil Rights Act of 1964 (Title VII), and violation of
14 civil rights under 42 U.S.C. §§ 1981 and 1983. Plaintiffs seek a declaration that Defendants'
15 conduct is unlawful and an injunction "preventing district employees from disseminating
16 racially disparaging material through its website and email system." [Dkt. 1, p. 8]. Plaintiffs
17 ask the Court to order Defendants to establish policies to effectuate the terms of the
18 injunction. Plaintiffs further seek damages resulting from Defendants' conduct. Plaintiffs
19 seek to prosecute those claims, and pursue the relief described above, on behalf of a class
20 comprising the Latino employees of the District.

21 **Legal Standard**

22 The Court has discretion to certify a class, but must exercise its discretion within the
23 framework of Fed. R. Civ. P. 23. Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186
24 (9th Cir. 2001) (affirming denial of class certification), amended by 273 F.3d 1266 (9th Cir.
25 2001). Pursuant to Fed. R. Civ. P. 23(a), there are "four prerequisites for class action
26 litigation, which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of
27 representation." Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003) (affirming class
28

1 certification in case alleging a racially-based hostile work environment). "In addition to
2 meeting the four conjunctive requirements of 23(a), a class action must also qualify under
3 one of the three subdivisions of 23(b)". Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163, 94
4 S.Ct. 2140, 2145 (1974) (class certification proper under Rule 23(c)(2), but district court
5 instructed to dismiss the case because the representative plaintiff refused to pay for notice
6 to the class members). The proponent of class certification "bears the burden of
7 demonstrating that she has met each of the four requirements of Rule 23(a) and at least
8 one of the requirements of Rule 23(b)." Zinser, 253 F.3d at 1186.

### Discussion

In their Complaint, Plaintiffs sought certification "of a class of all past, present, and future Latino employees of [the Maricopa County Community College District] who have been, continue to be, or in the future may be subjected to a hostile work environment on account of their race, color, and/or national origin." [Dkt. 1, p. 5]. In their Motion for Class Certification, Plaintiffs have changed the description of the putative class. Plaintiffs seek certification of a class defined as "all persons of Latino origin employed by [the Maricopa County Community College District] at any time between October 7, 2003 and the present, during which the official [Maricopa County Community College District] webpage included a link to a website maintained by Walter Kehowski that addressed issues of race, ethnicity, race relations, immigration, and/or similar matters unrelated to the subjects he teaches." [Dkt. 27, p. 1].

**A.   Rule 23(a) Prerequisites**

    **1.   Numerosity**

Plaintiffs must establish that the putative class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In determining whether joinder is impracticable, courts look to such factors as the geographical distribution of the members of the proposed class, Carr v. New York Stock Exchange, Inc., 414 F.Supp. 1292, 1304 (N.D. Cal. 1976) (numerosity not established where proposed class was alleged to have 100

members, all but two of whom lived in the Northern District of California) (citing DeMarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968)), and the number of members in the proposed class, Swanson v. American Consumer Indus., Inc., 415 F.2d 1326, 1333, fn. 9 (7th Cir. 1969) (40 members of class sufficient "where the individual members of the class are widely scattered"); State of Utah v. American Pipe & Constr. Co., 49 F.R.D. 17, 20-21 (C.D. Cal. 1969) (350 class members insufficient where many of the members had previously joined or intervened in related cases); Winkler v. DTE, Inc., 205 F.R.D. 235, 239 (D. Ariz. 2001) ("reasonable estimate" of 266 class members sufficient).

Here, Plaintiffs seek certification of a class comprising all Latino employees of the District from October 7, 2003 until the present. Plaintiffs allege that the District employed 703 Latinos in October of 2003, when Kehowski sent his e-mails. As of April 1, 2005, the District is alleged to employ 730 Latinos. The class of Latinos exposed to Kehowski's e-mails and website is potentially larger than 730, due to departures and hires occurring from October of 2003 until the present. Because they are all employed by the District, the geographical distribution of the putative class members is likely limited. Given that there are potentially more than 730 members of the proposed class, joinder would be "inefficient and costly," and therefore impracticable. See Winkler, 205 F.R.D. at 239 (impracticable to join 266 proposed class members all of whom were assumed to reside near Scottsdale, Arizona).

Defendants disagree with Plaintiffs' description of the class, arguing that the class should only include "individuals who claim to have read all of Professor Kehowski's e-mails, his entire web page, and any links." This class cannot meet the numerosity requirement because Plaintiffs "have identified fewer than a handful" of members. [Dkt. 56, p. 6]. Because this argument focuses on whether the alleged hostile work environment is individual or common to all Latino employees, it is better addressed in determining commonality.

### 2. **Commonality**

Plaintiffs must establish that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This is a minimal standard: "all that is required is a common issue of law *or* fact." Blackie v. Barrack, 524 F.2d 891, 904 (9th Cir. 1975). The Court in Blackie found a common issue of law in determining the standard of care applicable to the defendant corporation, its officers and its independent auditor. Id. at 905. The Court also found common issues of fact involving the "alleged inventory overvaluation," even though the alleged overvaluation would have affected the class members differently depending on when they bought stock. Id. at 904.

Defendants argue that commonality does not exist in this case "because there are enormous differences even as to the Kehowski material which employees throughout the District saw." [Dkt. 56, p. 4]. The differences in the materials viewed by the employees, so Defendants argue, is relevant in proving a racially hostile environment, which requires inquiry into the subjective perceptions of the victim. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22, 114 S. Ct. 367, 370 (1993) ("if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation"); see also Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003) (to prevail on hostile work environment claim a plaintiff must prove (1) subjection to conduct of a racial nature; (2) "that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment"). Therefore, Defendants conclude that commonality is lacking unless one "assume[s] that every Latino in the District chose to read all of this material or that a large number of Latino employees were offended by what they read,… to the point that the terms and conditions of their employment were affected." [Dkt. 56, p. 6].

In deciding whether to certify a class, a court may not look at the merits of the case. Eisen, 417 U.S. at 177-78, 94 S. Ct. at 2152-53 (court could not shift notice cost to the

defendants based on its finding that the class was "more than likely" to prevail). The Court should, however, consider evidence concerning the nature of Plaintiffs' claims in determining "whether the matters in controversy herein are primarily individual in character or are susceptible to proof in a class action." Polich v. Burlington Northern, 116 F.R.D. 258, 261 (D. Mont. 1987) (no commonality because there would be a "wide variance of proof" in establishing each class members' damages from the defendants' fraud).

In discrimination cases generally, a court may examine the extent of the defendant's alleged discriminatory conduct in determining whether commonality exists. Staton, 327 F.3d at 954 (in affirming class certification, noting evidence presented in class counsels' interviews, salary documents, and company-wide e-mail). The Ninth Circuit has "held, in a civil rights suit, that commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001) (commonality met notwithstanding "a wide variation in the nature of the particular class members' disabilities"). Commonality may be established by a uniform pattern of conduct by defendant. LaDuke v. Nelson, 762 F.2d 1318, 1332 (9th Cir. 1985) (uniform pattern of INS conduct established commonality among residents of migrant farm dwellings, even though the residents were affected differently by the conduct).

In discrimination cases alleging a hostile work environment, neither the Ninth Circuit nor any of the courts of appeals have directly addressed what affect the individual element of a hostile work environment claim should have in determining commonality. See Melissa Hart, Litigation Narratives: Why Jenson v. Eveleth Didn't Change Sexual Harassment Law, But Still Has a Story Worth Telling, 18 Berkeley Women's L.J. 282, 295 (2003) (reviewing Clara Bingham and Laura Leedy Gansler, Class Action: The Story of Lois Jenson and the Landmark Case that Changed Sexual Harassment Law (2002) ("The appropriateness of sexual harassment class action treatment has yet to reach the Supreme Court, and indeed has received essentially no attention in the courts of appeals."). Without commenting on how the individual element of a hostile work environment claim affects commonality, the

Ninth Circuit has allowed cases involving claims of hostile work environment to proceed as class actions. See Staton, 327 F.3d at 946, 953-59 (commonality existed where Plaintiffs complained "of a complex of discriminatory practices that includes compensation, training, and work environment in addition to promotions"); and see Donnelly v. Glickman, 159 F.3d 405, 408 (9th Cir. 1998) (district court certified class action in case alleging a gender-based hostile work environment after Plaintiffs "deleted their class claims respecting hiring, promotions, and training").

District courts have specifically this addressed this question and found commonality among the members of a putative class claiming a hostile work environment based on offensive communications. See, e.g., Newsome v. Up-to-Date Laundry, Inc., 219 F.R.D. 356 (D. Md. 2004) (finding commonality based on racially-hostile speech directed at class members); Markham v. White, 171 F.R.D. 217 (N.D. Ill. 1997) (finding commonality where "Individual Defendants made either the same or substantially similar offensive comments in each of the seminars attended by members of the proposed class").

In Newsome, the Court looked at whether the work environment was hostile towards the class as a whole. 219 F.R.D. at 362. In that case, the plaintiffs sought to certify a class consisting of "All African Americans employed by defendant" in certain departments over a specified period of time. Id., at 360. The plaintiffs alleged that "the defendants directed racially hostile speech at class members," thereby creating a hostile work environment. Id. at 362. The Court certified the class, finding that commonality existed because "[h]ostile work environment claims require plaintiffs to demonstrate that the landscape of the total work environment was hostile towards the class." Ibid. The Court found that the plaintiffs did not need to demonstrate that every class member heard the racial slur at issue because "[e]vidence of the subjective experiences of each class member is not necessary to support class-wide liability; there must only be evidence that some class members experienced objectively severe and pervasive conduct. Ibid, (citing EEOC v. Mitsubishi Motor Mfg. of

1  America, Inc, 990 F. Supp. 1059, 1074 (C.D. Ill. 1998) (using a totality of the circumstances
2  test in determining whether a class was subject to a hostile work environment).

3  Likewise in Markham, the Court focused on the defendants' conduct in finding
4  commonality among the members of the class. 171 F.R.D. at 221-22. There, the plaintiffs
5  sought certification of a class of all female police officers who attended training seminars
6  conducted by the defendants over a specified period time. The plaintiffs alleged that the
7  five individual defendants made sexually harassing and offensive comments during those
8  seminars, resulting in a work environment hostile to the female officers. Id. at 218.
9  Defendants argued that commonality could not exist among the female officers because
10 "what each class member saw or heard at any given seminar differs." Id. at 222. The Court
11 rejected this argument finding that "the proper inquiry is an objective one that asks what
12 the Individual Defendants said and did at each seminar, not what each member of the
13 plaintiff class heard and saw." Ibid. The Court found commonality because the defendants
14 "made either the same or substantially similar offensive comments in each of the seminars
15 attended by members of the proposed class." Ibid.

16 The Court finds the approach applied in Newsome and Markham persuasive. Those
17 cases direct a court, in determining commonality, to focus on the defendants' conduct and
18 whether that conduct was directed against the class as a whole. The virtue of the approach
19 taken from those cases is that it allows courts to adjudicate as class actions claims of
20 discrimination based on harassing conduct directed at the class as a whole. Otherwise an
21 anomaly would result: the defendants would create a hostile work environment for the
22 class as a whole, but a court would be barred from hearing a consequent hostile work
23 environment claim on behalf of the class as a whole. In short, the class would be harmed
24 as a whole, but forced to seek relief as individuals. This approach is in accordance with the
25 United States Supreme Court's comment that "civil rights cases against parties charged
26 with unlawful, class-based discrimination are prime examples" of "class actions for
27 declaratory or injunctive relief." Amchem Prods. v. Windsor, 521 U.S. 591, 614, 117 S. Ct.
28

1  2231, 2245 (1997) (denying class certification where uncommon questions predominated
2  among class of victims of asbestos exposure).

3  This approach is refined by examining cases where courts have found no
4  commonality existed among the members of a class alleging hostile work environment
5  claims. The reason commonly given for a lack of commonality is that the evidence
6  presented in those cases fails to establish that the class as a whole was subject to a hostile
7  work environment based on a uniform policy or practice of the defendants. See Stubbs v.
8  McDonald's Corporation, 224 F.R.D. 668, 675-76 (D. Kan. 2004) (no commonality on hostile
9  work environment claim because the alleged discrimination was based on "decentralized,
10 individualized decision-making," involved "different environments and conditions" and
11 involved "different pay scales, positions, and locality pay differences"); Elkins v. American
12 Showa, Inc., 219 F.R.D. 414, 423-425 (S.D. Ohio 2002) (no commonality because the
13 evidence offered failed to show "that the plant-wide environment was hostile" and "fail[ed]
14 to show a common pattern"); Zapata v. IBP, Inc., 167 F.R.D. 147, 159 (D. Kan. 1996) (no
15 commonality where discrimination claims focused "upon the individual actions taken by
16 different individual supervisors, and not a uniform policy or practice"). In determining
17 commonality among a class seeking to bring a hostile work environment claim, a court
18 should examine whether the alleged discrimination was directed against the class as a
19 whole or against individual members of the class and whether the discrimination was
20 pursuant to a policy or uniform practice of the defendants.

21 Here, Plaintiffs have alleged facts sufficient to find discrimination against the
22 putative class as a whole based on a uniform policy or practice of the Defendants, thereby
23 establishing common questions of law and fact among the members of the putative class.
24 See Stubbs, 224 F.R.D. at 675 (commonality not satisfied by bare allegations of a pattern
25 and practice of discrimination).

26 Plaintiffs allege that Kehowski sent out three e-mails to every employee of the
27 District, including the Latino employees. Those e-mails contained Kehowski's pejorative
28

remarks against minorities in general and Latinos in particular. The e-mails also contained excerpts of articles and links to articles expressing similar views. Plaintiffs further allege that Kehowski's website, linked to the District's website, carried materials expressing Kehowski's hostility towards Latinos. Kehowski's missives were not sent to only some members of the putative class, nor was his website available only to a few. One Latino employee received an e-mail directed specifically to that employee, but that e-mail was a reply to the response the employee had sent to Kehowski regarding his district-wide e-mails and the reply set forth the same themes expressed in the District-wide e-mails. Kehowski's views were published to all members of the putative class on the e-mail communication system and website used by all the District's employees. The uniformity of distribution distinguishes this case from cases such as Zapata, 167 F.R.D. at 159, where the claims of discrimination were based on conduct by different individual supervisors against different members of the class. Those facts are common to all the members of the putative class. See Markham, 171 F.R.D. at 222 (commonality where the defendants made same or substantially similar remarks to all members of class).

Defendants' response to Kehowski's communications and the complaints they engendered is also alleged to be based on Defendants' policy. Defendants have expressed their disdain for Kehowski's views, but have not limited Kehowski's communications through e-mail or the website, and have not taken any action against Kehowski personally, taking the position that their e-mail system is open for employees to express their views "on almost any subject." [Dkt. 56, ex. 3]. Defendants maintain that these actions are required by their policies regarding the use of the e-mail system and the District's website.

Defendants' response regarding Kehowski's communications has been directed to the putative class as a whole. On October 16, 2003, Defendant Randolph sent an e-mail to the employees of Glendale Community College, advising that "the openness of [the District's e-mail] system also allows individuals to express opinions on almost any subject" and that "I want everyone... to know that personally and administratively, I support the

1 District's values and philosophy about diversity." [Dkt. 56, ex. 3]. Defendant Glasper's
2 press release on October 23, 2003, which described the openness of the employee
3 communications system, was for general distribution and garnered attention in the Arizona
4 Republic newspaper. On November 7, 2003, Defendant Randolph held a meeting with
5 approximately 40 Latino employees of Glendale Community College. On December 9, 2003,
6 the District's Governing Board held a public meeting regarding Kehowski's
7 communications.

8 Given the class-wide distribution of Kehowski's communications and the uniform-
9 and public- response Defendants had to those communications, the Defendants are wrong
10 in arguing that the work environment of each member of the putative class must be
11 determined individually. Kehowski's communications are arguably offensive on their face;
12 a Latino employee would not need to read the entirety of those communications to feel
13 under attack. Further, Kehowski's views received the attention of the entire District, and
14 the public, evidenced by the meetings, district wide e-mails, press releases and media
15 coverage.

16 Those facts also present common questions of law. In deciding the merits of this
17 case, the fact-finder will have to determine whether Kehowski's communications and the
18 Defendants' responses thereto created a hostile work environment for the Latino
19 employees of the District. As alleged, that determination will focus on the offensiveness
20 of Kehowski's communications and the propriety of the Defendants' response and the
21 District's policy regarding employee communications. Because Kehowski's
22 communications are allegedly offensive to the entire class and were directed to the entire
23 class, the fact-finder should consider their offensiveness to the putative class as a whole.
24 See Newsome, 219 F.R.D. at 362 (finding that racial slur was objectively offensive and
25 directed at class members). The fact-finder will also have to determine whether the District's
26 policy, which arguably prevented Defendants from silencing or reprimanding Kehowski,
27 was required by Kehowski's right to freedom of expression, as Defendants have argued.
28

### 3. **Typicality**

Plaintiffs must establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied if the claims of the representative parties "are reasonably coextensive with those of the absent class members." Staton, 327 F.3d at 957 (quotation omitted). "The commonality and typicality requirements of Rule 23(a) tend to merge." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157, n. 13, 102 S. Ct. 2364, 2371, n. 13 (1982).[3]

Here, the claims of the Plaintiffs are "reasonably coextensive with," if not identical to, those of the putative class members. Plaintiffs and the class members received the same communications from Kehowski. They argue those communications are patently offensive to the Plaintiffs and the class members. Defendants' response to Kehowski's communications is alleged to be uniform and based on the District's policy.

Should the case reach the stage of determining monetary damages, the amount of the monetary damages suffered by the Plaintiffs may differ from that suffered by the class members. A potential variance does not render Plaintiffs' claims less than coextensive with those of the putative class members. The Complaint does not include a prayer for reinstatement, front-pay, back-pay, or any other type of damages or equitable relief available under Title VII, which could require a determination unique to each member of the putative class. See 42 U.S.C. § 2000(e)-5(g)(1). The damages requested in the Complaint for "emotional distress, humiliation, and anguish" are not based on facts unique to each member of the class, but are based on Defendants' actions affecting the members of the class as a whole.

---

[3] Citing Falcon, Defendants merge their arguments concerning commonality and typicality. [Dkt. 56, pp. 7-10]. Having addressed Defendants' arguments in its discussion of commonality, the Court need not address them again in discussing typicality.

### 4. **Adequacy of Representation**

The Plaintiffs, as representative parties, must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This standard requires (1) that the representative parties have coextensive interests with the class members and (2) that the representative parties and their counsel will vigorously prosecute the case. Staton, 327 F.3d at 957-59. As discussed above, the Plaintiffs in this case have claims coextensive with those of the putative class members and there is nothing in the record to indicate that their interests in pursuing those claims are not coextensive with the interests of the class members.

The representative parties and their counsel appear willing to vigorously prosecute this case. The Plaintiffs all pursued their claims against Defendants to the EEOC. They have all sat for their depositions [Dkt. 56, attachments] and produced declarations in support of the instant Motion to Certify [Dkts. 31, 33, 36-39].

Counsel for the representative parties have been active in conducting depositions and taking discovery. Counsel have experience litigating class action and civil rights cases.

Lead counsel for the class would be Thomas A. Saenz of the Mexican American Legal Defense and Educational Fund [MALDEF], which was created to safeguard the civil rights of Latinos and has more than 30 years experience in litigating class action cases, including those brought for violations of civil rights in the context of employment. Thomas Saenz oversees MALDEF's complex employment litigation and references six such cases in which he has served as class counsel. MALDEF has a budget of approximately $6 million, indicating it has the resources to vigorously prosecute this case on behalf of the class. [Dkt. 28]. MALDEF has staff attorneys who will assist in this case, so far five have notified the Court of their appearance in this case. Also representing the class would be David F. Gomez and Michael J. Petitti, Jr. of Gomez & Petitti, PC, who have experience with employment cases, particularly in the Arizona state courts.

**B.     Certification under Rule 23(b)(2)**

A case may be maintained as a class action under Fed. R. Civ. P. 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." A case involving a claim for monetary damages may be maintained as a class action under Rule 23(b)(2) if "the claim for monetary damages [is] secondary to the primary claim for injunctive or declaratory relief." Molski v. Gleich, 318 F.3d 937, 947 (9th Cir. 2003).[4] In Molski, the claim for injunctive relief was primary and that for monetary damages was secondary because the defendants allegedly "acted in a manner generally applicable to the class" and "injunctive relief appeared to be the primary goal in the litigation." 318 F.3d at 950. "[C]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of cases maintainable as class actions under Rule 23(b)(2). Amchem Prods, 521 U.S. at 614, 117 S. Ct. at 2245.

Plaintiffs allege that Defendants "acted in a manner generally applicable to the class." Kehowski directed his communications to every member of the putative class. Some class members may have read different portions of Kehowski's communications and had different reactions to them. Nevertheless, Defendants' response was a uniform position stressing their disdain for Kehowski's positions and citing their policy, which prevented them from silencing Kehowski.

The primary goal of this litigation appears to be injunctive and declaratory relief. Plaintiffs emphasize that the work environment is hostile to Latinos and seek relief from the "hateful, racist messages that altered their work environment." [Dkt. 61, p. 8]. In their

---

[4] Defendants argue that a case may only be maintained under Rule 23(b)(2) if the claims for monetary damages are incidental to the litigation. In support of this proposition, Defendants cite Kanter v. Warner-Lambert Co., 265 F.3d 853, 860 (9th Cir. 2001) and Probe v. State Teachers' Retirement System, 780 F.2d 776, 780 (9th Cir. 1986). Expressly referring to those cases, the Ninth Circuit stated that "our use of the word 'incidental' was intended to mean 'secondary' to injunctive relief." Molski, 318 F.3d 950, n. 14.

Complaint, Plaintiffs allege that those messages are "abusive and threatening," creating "a racially charged employment atmosphere." [Dkt. 1, p. 4]. Despite complaints and an EEOC determination, Defendants allegedly "failed to take appropriate action and the hostile work environment continued." [Dkt. 1, p. 5]. Plaintiffs propose to cure the hostile work environment by altering Defendants' policies concerning e-mail and website usage, and ordering Defendants to enforce the policies.

One of the primary questions in this case is subject to resolution by a declaration. Defendants' policies concerning communication among its employees raise questions concerning the interplay of anti-discrimination law and protections for free expression. Defendants argue that their policy preventing them from limiting Kehowski's communications, and racially-based communications generally, is required by academic freedom and the right to freedom of expression.

Damages are secondary to the claims for injunctive and declaratory relief. As previously discussed, Plaintiffs do not seek reinstatement, front-pay, back-pay, or any of the other types of damages often available in a hostile work environment case. See 42 U.S.C. § 2000(e)-5(g)(1). Nor do those types of damages appear appropriate in a case where no employee is alleged to have been terminated or denied a promotion based on the hostile work environment. The damages requested in the Complaint are for "emotional distress, humiliation, and anguish" based on the Defendants' actions affecting the members of the class as a whole. In any event, the issue of monetary damages could be determined individually, if the course of this case reveals that it is an issue properly so determined. See Fed R. Civ. P. 23(c)(1)(C) (class certification is subject to amendment or alteration).

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Class Certification [Dkt. 26] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is certified as a class action on behalf of all persons of Latino origin employed by the Maricopa County Community College District

at any time between October 7, 2003 and the present, during which the official Maricopa County Community College District webpage included a link to a website maintained by Walter Kehowski that addressed issues of race, ethnicity, race relations, immigration, and/or similar matters unrelated to the subjects he teaches.

**IT IS FURTHER ORDERED** that the claims for violations of 42 U.S.C. §§ 2000e et seq. and 42 U.S.C. §§ 1981 and 1983 as set forth in the Class Complaint [Dkt. 1] are certified as class claims.

**IT IS FURTHER ORDERED** that Thomas A. Saenz of the Mexican American Legal Defense and Educational Fund and David F. Gomez and Michael J. Petitti, Jr. of Gomez & Petitti P.C. are appointed as class counsel.

DATED this 12th day of January, 2006.

*[signature]*

Earl H. Carroll
United States District Judge